UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JASON BAEZ,
      Plaintiff,

vs.                             Case No.: 3:20cv5591/MCR/EMT

OFFICER DANIELS, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on a motion to dismiss filed by Defendants Dr. Rodriguez and Nurse Parker (ECF No. 41). Plaintiff Jason Baez (Baez) filed a response in opposition to the motion to dismiss (ECF No. 53).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the submissions, the parties' arguments, and the relevant law, the undersigned concludes that Defendants' motion to dismiss should be denied.

## I.    BACKGROUND

Baez was housed at Santa Rosa Correctional Institution at the time of the events underlying this action (*see* Second Amended Complaint, ECF No. 18 at 6–

9).   In the Second Amended Complaint, which is the operative pleading, Baez brings an Eighth Amendment claim against each Defendant (*id.* at 6–10).   Baez claims that Defendants Walsingham, Evans, Simmons, Allender, and Daniels used excessive force against him on June 27, 2019 (*id.* at 6–7, 9).   Baez claims that Defendants Nurse Parker and Nurse Shirah were present during the use of force but failed to intervene (*id.* at 7, 9).   Baez claims that Defendant Dr. Rodriguez was deliberately indifferent to his need for medical treatment for the injuries resulting from the use of force (*id.* at 7–8, 9).   Baez also brings a second excessive force claim against Defendant Walsingham based upon a separate use of excessive force on August 13, 2019 (*id.* at 8–9, 10).   As relief, Baez seeks compensatory and punitive damages (*id.* at 10).   He also seeks an injunction requiring Defendants to provide medical treatment that will restore the blindness in his right eye, which allegedly resulted from the use of force on June 27, 2019 (*id.*).

Dr. Rodriguez and Nurse Parker filed a motion to dismiss the Second Amended Complaint on three grounds:   (1) Baez failed to exhaust administrative remedies; (2) Baez's allegations fail to state a claim upon which relief may be granted; and (3) Defendants are entitled to qualified immunity (Motion to Dismiss, ECF No. 41).   In Baez's response, he argues he exhausted his administrative remedies, that the factual allegations of the Second Amended Complaint state a

plausible claim for relief against Dr. Rodriguez and Nurse Parker, and that Defendants are not entitled to qualified immunity (Response to Motion to Dismiss, ECF No. 53).

## II.    EXHAUSTION

Defendants' first argument for dismissal is that Baez failed to exhaust his available administrative remedies (Mot. to Dismiss at 5–8).    Baez contends he satisfied the exhaustion requirement (Resp. to Mot to Dismiss at 4–5).

### A.    Legal Framework

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 until such administrative remedies as are available are exhausted."    42 U.S.C. § 1997e(a).    "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."    *Bryant v. Rich*, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (internal quotation marks and citation omitted). Exhaustion of administrative remedies serves two main purposes:    first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second,

it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006).

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citation omitted). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citations omitted). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

However, "'[a] remedy has to be available before it must be exhausted.'" *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1354–55 (11th Cir. 2020) (quoting *Turner*, 541 F.3d at 1084).   In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court explained the "availability doctrine" as follows:

> Building on our own and lower courts' decisions, we note as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. Given prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise.   But when one (or more) does, an inmate's duty to exhaust "available" remedies does not come into play.

*Id.* at 1859 (internal citations omitted).   The Court then enumerated three circumstances in which administrative remedies were unavailable:   (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 1859–60.

A proper *Turner* analysis of exhaustion after *Ross* requires the plaintiff to allege that a grievance procedure is unavailable to him in response to the defendant's affirmative defense of failure to exhaust.   *Geter*, 974 F.3d at 1356.   Responding

with allegations that a prison system is unavailable allows the district court to complete the necessary analysis set forth in *Turner* for evaluating whether a defendant is entitled to have a complaint dismissed for failure to exhaust.  *Id.* (citing *Turner*, 541 F.3d at 1082).   With respect to the burden of proving unavailability, the Eleventh Circuit held, "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him."  *Geter*, 974 F.3d at 1356.

### B.    FDOC's Administrative Grievance Procedure

The relevant administrative grievance process in the instant case is the FDOC's grievance procedure set for in § 33.103.001–.019 of the Florida Administrative Code.   Generally speaking, an inmate must utilize the informal grievance process prior to initiating a formal grievance.   *See* Fla. Admin. Code r. 33-103.005(1).   However, an inmate may bypass the informal grievance step and initiate the administrative grievance process at the formal institutional level for a grievance of an emergency nature or a grievance of reprisal.   *See* Fla. Admin. Code r. 33-103.005(1); r. 33-103.006(3)(a), (c).   For an emergency grievance or a grievance of reprisal, the inmate must clearly state his reasons for bypassing the

informal grievance step and state at the beginning of the formal grievance form the subject of the grievance. *See* Fla. Admin. Code r. 33-103.006(4). Failure to follow this requirement and failure to justify filing directly with the warden "shall result in the formal grievance being returned without action to the inmate with the reasons for the return specified." *Id.*

An emergency grievance is defined as "[a] grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code r. 33-103.002(4). Upon receipt of an emergency grievance, the reviewing authority must take the following action as soon as possible, but no later than two calendar days following receipt:

1. Review complaint and contact staff for additional information if necessary;

2. If an emergency is found to exist, initiate action to alleviate condition giving rise to the emergency;

3. Provide formal response to the inmate within 15 calendar days as required by paragraph 33-103.011(3)(d), F.A.C.; and

4. If an emergency is not found to exist, a response will be provided to the inmate indicating that the complaint is "not an emergency" with instructions to resubmit at the proper level, signed and dated by the responding employee, and returned to the inmate within 72 hours of receipt.

Fla. Admin. Code r. 33-103.006(3)(a).

A grievance of reprisal is defined as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure."   Fla. Admin. Code r. 33-103.002(9).

Following investigation and evaluation of a formal grievance, the institution must provide a response to the inmate which states whether the grievance is approved, denied, or being returned; and the response must also state the reasons for the approval, denial, or return.   Fla. Admin. Code r. 33-103.006(6).   The response to the formal grievance must also include the following statement, or one similar in content and intent if the grievance is denied:

> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

Fla. Admin. Code r. 33-103.006(7).

An inmate may also bypass the informal grievance step and initiate the administrative grievance process at the formal institutional level if he is claiming deficient medical care.   *See* Fla. Admin. Code r. 33-103.006(e), r. 33-103.008(1);

*see also Glenn v. Smith*, 706 F. App'x 561, 562–63 (11th Cir. 2017) (citing Fla. Admin. Code rr. 33-103.006, 33-103.007, 33-103.008).   Institutional staff must forward a medical grievance to the institution's Chief Health Officer or a physician for investigation and response.   *See* Fla. Admin. Code r. 33-103.008(1).   The Chief Health Officer or physician must review the grievance, prepare a response, and sign it.   *See id.*   The other procedures applicable to the processing of a formal grievance, set forth in Fla. Admin. Code r. 33-103.006, apply to formal grievances of a medical nature.   *See* Fla. Admin. Code r. 33-103.008(1).

If the inmate feels that the formal grievance has not been satisfactorily resolved, the inmate may appeal the denial to the Office of the Secretary (Central Office).   *See* Fla. Admin. Code rr. 33-103.007(1), 33-103.008.   If a grievance appeal of a medical nature is received by the Central Office, it must be forwarded to the Office of the Assistant Secretary for Health Services for investigation and response.   *See* Fla. Admin. Code r. 33-103.008(2).   If the appeal is not medical in nature, the Central Office's response must state whether the appeal is approved, denied, or being returned; and it must also state the reasons for the approval, denial, or return.   *See* Fla. Admin. Code r. 33-103.007(6)(f).   If the appeal is returned to the institution or facility for further investigation or response, the inmate may,

following receipt of that response, re-file with the Office of the Secretary if he is not

satisfied with the response.   *See* Fla. Admin. Code r. 33-103.007(8).

### C.    Record of Baez's Grievances

Defendants submitted two hundred sixty-six pages of Baez's grievance appeal

file with their Motion to Dismiss (Mot. to Dismiss at 7, Ex. A, ECF No. 41-1).   They

contend the following formal grievances or appeals relate to Baez's allegations in

the Second Amended Complaint:   Grievance Log No. 19-6-26357, Grievance Log

No. 1907-119-134, and Grievance Log No. 19-6-22741 (*see* Mot. to Dismiss at 7

n.5, Ex. A at 15–18, 19–21, and 138–42, respectively).[1]

Baez contends two additional grievances relate to his claims against Dr.

Rodriguez and Nurse Parker, neither of which were included in the grievance appeal

file:   Grievance Log No. 119-1907-0003 and Grievance Log No. 119-1907-0742

(Resp. to Mot. to Dismiss, Ex. B at 21–22 and 27, respectively).

The record demonstrates that on June 27, 2019, Baez filed Grievance Log No.

119-1906-1156, which he labeled, "EMERGENCY SENSITIVE GRIEVANCE"

(Mot. to Dismiss, Ex. A at 142).   Baez submitted it on the Inmate Request form,

---

[1]  Defendants also identified Grievance Log No. 19-6-3704 and Grievance Log No. 1909-209-022 (Mot. to Dismiss at 7, Ex. A at 80–81 and 82–85, respectively).   However, those grievances are not relevant to Baez's claims against Dr. Rodriguez and Nurse Parker and instead relate to Baez's second excessive force claim against Defendant Officer Walsingham on August 13, 2019.

indicated that it was an informal grievance, and directed it to the warden (by checking the relevant boxes) (*id.*).   Baez stated the following:

> On June 27, 2019, from the hours of 8AM–9AM I was threatened by C.O. Simmins [sic] on audio in front of everyone.   So while was being seen in medical by Nurse Parker and Richardson for a medical emergency, Officer Walmsingham [sic] punched me 2 times in the face and Simmons, Allender, Daniels, Walmsingham [sic], [and] Sgt. Evans beat me to sleep by kicking, punching me and choking me all in the face, head, ribs, testicles, and neck, causing numerous serious injuries. My eye is totally shut closed and still bleeding and it's 10 pm at night as this is being wrote [sic].   I have numerous witnesses to this horrible crime done to me.   Earlier that day right before me Officer Walsingham also assaulted my next door neighbor Kevin Higginbotham #G10346 by punching him in the face 2 times in medical in front of Lt. Neel, Simmons, Jenkins, Sgt. Evans, Daniels, Allender, Nurse Parker & Nurse Richardson and no one did anything.   **The both [sic] nurses ran out the [sic] nurse station after they started beating me leaving me for dead!**

(Mot. to Dismiss, Ex. A at 142) (**bold** added).

On July 5, 2019, a prison official responded to Baez's grievance as follows:

> Your informal grievance has been reviewed and evaluated.

> This incident is under review by the use of force unit of the Office of the Inspector General, as all uses of force are.   Inasmuch as it is being reviewed, no action will be taken at this time.

> Based on the above information, your grievance is denied.

(Mot. to Dismiss, Ex. A at 142).

On July 9, 2019, Baez filed a formal grievance to the warden, Grievance Log No. 1907-119-170, which Baez labeled, "EMERGENCY & SENSITIVE GRIEVANCE" (Mot. to Dismiss, Ex. A at 141).  Baez stated that the grievance pertained to an assault by staff on June 27, 2019 between 8:00–9:00 a.m. (*id.*).  Baez stated that five officers brutally beat him inside the "nurse medical station" for no reason (*id.*).  Baez stated he loudly refused medical attention, and Nurse Parker verbally acknowledged his refusal, because he did not want to enter the nurse station where there was no camera (*id.*).  Baez stated that the officers forced him into the nurse station and beat him (*id.*).  Baez alleged that the beating was in retaliation for an incident that occurred on May 26–27, and that he was still being threatened by the same officers (*id.*).

The warden responded on July 9, 2019, as follows:

Your request for administrative remedy or appeal has been received, reviewed, and evaluated.

This incident is under review by the use of force unit of the Office of the Inspector General.  Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

Based on the above information, your grievance is denied.

Future inquiries concerning these allegations should be addressed to the institutional inspector by submitting a DC6-236, Inmate Request.

> A copy of this grievance has been forwarded to the institutional inspector.

(Mot. to Dismiss, Ex. A at 140).

On July 17, 2019, Baez appealed the warden's denial to the Central Office, Grievance Log No. 19-6-27741 (Mot. to Dismiss, Ex. A at 139).   Baez stated, in relevant part:

> As of right now I'm completely blind in my right eye and I have an infection in my right eye which is causing me extreme pain and affecting my eyesight in my left eye, which are both oozing some kind of fluid. . . .   It's been 19 days and the inspector's office is just now getting involved at taking pictures and having me examined for bruises only because I've been writing grievances after grievances because it's the only thing I can do to protect myself from further harm and retaliation. . . .   These are all the injuries I sustained:   my left eyebrow area glued shut from big laceration, busted/broke [sic] nose, which bled profusely for 3 days, right side of face totally black and blued [sic] from first being punched in the temple 2x's [sic] by Officer Walmsingham [sic], then being hit in the right eye orbit with a walkie talkie radio, causing me to bleed out [sic] my eye socket for 3 days ½ [sic] straight **with no medical attention to stop the bleeding**, . . . .

(Mot. to Dismiss, Ex. A at 139) (**bold** added).

On July 19, 2019, the Central Office provided the following response:

> Your appeal has been reviewed and evaluated.   The subject of your grievance was previously referred to the Office of the Inspector General.   It is the responsibility of that office to determine the amount and type of inquiry that will be conducted.   This inquiry/review may or may not include a personal interview with you.   Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

As this process was initiated prior to the receipt of your appeal, your
request for action by this office is denied

(Resp. to Mot. to Dismiss, Ex. B at 28; *see also* Mot. to Dismiss, Ex. A at 138

(partially unreadable version)).

While Baez was pursuing that set of grievances and appeals, he initiated

another set of grievances on June 30, 2019, by filing Grievance Log No. 119-1907-

003 (Resp. to Mot. to Dismiss, Ex. B at 21).    Baez submitted it on the Inmate

Request form, indicated that it was an informal grievance, and directed it to the

warden (by checking the relevant boxes) (*id.*).    Baez stated the following:

> This is a grievance of reprisal, sexual harrassment [sic], sexual assault,
> staff abuse, negligence stemming back from 5/26/19, 5/27/19 up to
> 6/27/19 of which the first incident taken [sic] place on 5/26–5/27/19
> has already been reported and is under investigation.   I need Wing 1
> Pelco video and audio of Q Dorm hallway & nurse station.   Pelco
> video & audio camera held for 90 days or as long as it is allowed to be
> held for investigation and litigation purposes, or retained for the date of
> 6-27-19 as well as the handheld video recording of the use of force for
> the incident 6-27-19.   Just before I was forcefully walked into the
> nurses station by officers Simmons, Allender, Daniels, Walmsingham
> [sic] & Sgt. Evans, the Nurse station/holding cell Pelco video camera
> (9 AM) will show 5 officers standing in front of the holding cell
> sexually and verbally harrassing [sic] me and threatening to beat me up.
> It will show them pull me out of the cell and I refused to walk into the
> nurse station of which [sic] I also told them I refuse medical treatment
> but to no avail.   Nurse Parker spoke out loudly and acknowledged me
> refusing medical attention at this time as well.   The camera will still
> show me being escorted into medical unharmed and without any serious
> bruises and injuries of which [sic] were being covered up by placing an

[sic] spit shield over my face which is what they do on mostly every staff abuse case to inmates in DOC period!  **Staff abuse by nurse[s] Parker and Richardson is [sic] they allowed this to happen and the Pelco camera will show them both run out the [sic] nurse station leaving me to be beat to sleep and I believe beat in the eye with a walkie talkie right before losing consciousness from also being choked, drowning in my own pool of blood.**  Yes there was that much blood just ask the runner around [sic] who cleaned it up.  I want to press charges on all officials involved in this crime against me because I did nothing at all to warrant be [sic] brutally beaten by these officers of the law the way they did.  This is clear retaliation from an incident that happened here at Santa Rosa's Main Unit and me reporting staff abuse and PREA on there [sic] friends and co-workers because they've told me so!   (See Grievance Log #19-6-22475).

**<u>Medical negligence and staff abuse on Dr. Rodriguez['s] part for not sending me out to the hospital for the seriousness of my injuries to where he could not stop the bleeding to my right eye socket which was completely closed shut and oozing blood for 3 days straight along with blood in my urine and internal bleeding from vomiting chunks of blood from being kicked in the ribs and stomach and testicles.  Dr. Rodriguez only sent me back to my cell like this of which [sic] they had to come later and do an emergency cell breach because I was dead or unconscious inside by cell with blood and vomit all over the walls and myself.</u>**  <u>Dr. Rodriguez allowed Officer Konzalman to forcefully use a UFC pressure point move on my sternum bone because they could not revive me with ammonia packs of which [sic] he badly hurt and injured my chest area which is all black and blue and hurts badly.</u>  This is not policy and medical procedure but instead abuse and medical negligence on <u>Dr. Rodriguez</u> and Officer Konzallman's [sic] part.  They did this about 5 to 6 times because I kept going out of conciousness [sic].  **I was suppose [sic] to be sent to the outside hospital due to the seriousness of my injuries period!**  I'm still being threatened and harrassed [sic] by security till today 6-30-19.  Officer [illegible] even placed a sand bag in front of my door at 9 pm on 6-29-19 for no reason because I aint [sic] flood.  I'm presently in fear for my life and safety here at Santa Rosa C.I.  Please

retain all video footage on dates above for further investigation for 90
days as per Chapter 33.

(Resp. to Mot. to Dismiss, Ex. B at 21–22) (underline in original, **bold** added).

On July 5, 2019, a prison official responded to Baez's grievance as follows:

Your grievance has been received, reviewed and evaluated.  On the
stated date of 6-27-19 the use of force was as a result of your
headbutting Officer Walsingham on the head.  All events are already
documented as a use of force, therefore your grievance has been
received, reviewed, and evaluated, and your grievance is returned
denied.

Based on the above information, your grievance is denied.

(Resp. to Mot. to Dismiss, Ex. B at 21).

On July 7, 2019, Baez filed a formal grievance to the warden, Grievance Log

No. 1907-119-134, which he labeled, "Emergency Grievance" (Mot. to Dismiss, Ex.

A at 20).   Baez stated the following, in relevant part:

I'm taking this Emergency and other sensitive grievance I sent to the
Inspector to the next level because he denied my factual and true
allegations of which he labeled as a use of force of which [sic] is clearly
not true but instead an excessive use of force, of which [sic] I never did
anything to even warrant any use of force whatsoever.  All I did was
sit on a medical table and got assaulted by Officer Walmsingham [sic]
by him punching me on the side of the face 2 times and all other officers
present (Simmons, Allender, Daniels, Sgt. Evans, Walmsingham [sic])
lifted me up in the air & slammed me head first to the floor **in front of
nurses Parker and Shyra [sic],** and beat me to sleep by kicking me,
punching me, choking me, and finally holding me by the face while
someone hit me 2 times in my right side eye and orbit with either a
walkie talkie radio or some hard solid object which knocked me

unconscious and caused my eye socket to bleed for 3 days straight where medical staff could not stop the bleeding.  I was punched and kicked in the stomach and testicles to where the testicles were swollen for days and blood found in my urine.   I was vomitting [sic] chunks of blood from internal bleeding, busted nose, glued my left eye shut from deep laceration, busted mouth with 7 top teeth barely still inside my mouth (Need to See Dentist), black and blue mustache and totally blind in right eye and eye still shut as of today **with no medical attention since incident.   This incident happened on June 27, 2019 and today is July 7, 2019.   So I've been blind for 10 days now and can hardly even see from my left eye which is blurry.**  Please see attached 119-1906-1129 for more details of how Walmsingham [sic] is a loose canon [sic] **assaulting inmates in front of nurses** and co-workers placing everyone in jeopardy of losing their jobs.   I'm in fear for my life and **need medical attention** due to the serious injuries and I'm still being harrassed [sic] by these officers and their coworkers.   I'm now being given empty trays and need to be transferred.   (I also want to press charges.)

(Mot. to Dismiss, Ex. A at 20) (**bold** added).

The warden responded on July 8, 2019, as follows:

Your request for administrative remedy or appeal has been received, reviewed, and evaluated.

This incident is under review by the use of force unit of the Office of the Inspector General.  Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

Based on the above information, your grievance is denied.

Future inquiries concerning these allegations should be addressed to the institutional inspector by submitting a DC6-236, Inmate Request.

A copy of this grievance has been forwarded to the institutional inspector.

(Mot. to Dismiss, Ex. A at 19).

On July 11, 2019, Baez appealed the warden's denial to the Central Office, Grievance Log No. 19-6-26357, which he labeled, "GRIEVANCE OF EMERGENCY & SENSITIVE NATURE" (Mot. to Dismiss, Ex. A at 16–18). Baez stated he was suffering reprisal and retaliation stemming from an incident that occurred on May 26–27, 2019 (*id.*). Baez complained that officers were falsifying documents and reports to characterize the incident as a use of force, but it was an incident of staff abuse and assault (*id.*). Baez then relayed the following:

> Well, to make a long story short, I called a psyche emergency and 5 officers at 8–9 AM escorted me to the grill gate Q Dorm holding cell, threatening and harrassing [sic] me very low voiced [sic]. View of grill gate Pelco camera will show officers Simmons, Allender, Walmsingham [sic], Sgt. Evans, & Daniels surrounding the holding cell threatening to beat me and sexually harrassing [sic] me. (See Pelco grill gate camera and all wings audio for proof.)
>
> Once I heard these officers talking like this I knew I was going to get beat so when they pulled me to go into the medical room off camera I stated in a loud enough voice that I refuse medical attention of which [sic] nurse Parker also stated in a loud voice that she heard me refuse. However, these officers still forcefully walked me into the nurse station **where the nurses never made any attempt to assess me but instead watched as these officers positioned themselves around me till officer Walmsingham [sic] initiated the assault by punching me on the right side of my temple area while Simmons and the rest lifted me up in the air and slammed me face first to the ground damn**

**near knocking all 7 top teeth out of my mouth of which [sic] till to date[,] July 11, 2019[,] I've still not seen the dentist and can hardly chew my food.   I'm also completely blind in my right eye which is still shut completely close [sic].   Dr. Rodriguez had to send me to a [sic] eye specialist because he can't tell what's wrong, only that I have a lot of blood clots in my eyeball from the severe damage.** This was not any use of force but instead an all out [sic] assault of staff on me.   **(See Grievance log #119-1907-003 for further details on seriousness of injuries and medical negligence by medical staff.)** . . . . So as you can plainly and clearly see that this isn't going to stop until someone of higher authority does something, because the Warden and Institutional Authorities aren't doing anything after numerous grievances put in and filed. . . .

(Mot. to Dismiss, Ex. A at 17–18) (**bold** added).

On July 17, 2019, the Central Office provided the following response:

Your appeal has been reviewed and evaluated.  The subject of your grievance was previously referred to the Office of the Inspector General.  It is the responsibility of that office to determine the amount and type of inquiry that will be conducted.  This inquiry/review may or may not include a personal interview with you.  Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

Note:  This grievance is not accepted as a grievance of an emergency nature.

Furthermore, if you fear staff, you need to file an informal to the colonel.  The Colonel should have the opportunity to address these issues regarding staff at the institution.

As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied

(Mot. to Dismiss, Ex. A at 15).

On July 17, 2019, Baez filed Grievance Log No. 119-1907-0742 (Resp. to Mot. to Dismiss, Ex. B at 27). Baez submitted it on the Inmate Request form, indicated that it was an informal grievance, and directed it to the Inspector's Office (*id.*). Baez stated:

> **This is a grievance for medical negligence against medical staff of Q-Dorm not giving me proper medical attention. I've been putting in sick calls back to back about my right eye hurting and being infected and no one's doing anything about it. They haven't put me on any antibiotics and my eyes both right and left are oozing some kind of plasma or fluid that causing [sic] me not to see out of my left eye. I'm totally blinded in my right eye from an excessive use of force and assault from officer on 6-27-19 here at Q Dorm's medical station, where they brutally beat me.** Now I'm being harrassed [sic] by all shift officials and even medical staff members don't want to help me and are being nasty towards me. . . . **I'm being harrassed [sic] and denied medical attention and care. My eyes are infected and my whole right side of my face is in pain (almost unbearable). I need medical attention please.**

(Resp. to Mot. to Dismiss, Ex. B at 27) (**bold** added).

A Senior Inspector responded to Baez's grievance on July 22, 2019, as follows:

> Received, Reviewed, & Evaluated.

> FAC 33-103-014 grievance addresses more than one issue.

> You have been previously seen by medical for those complaints at the direction of the OIG [Office of Inspector General] within the past week.

> Based on the above information, your grievance is denied.

(Resp. to Mot. to Dismiss, Ex. B at 27).

## D.    Discussion

Defendants Dr. Rodriguez and Nurse Parker argue that although Baez grieved at length the actions of FDOC staff related to the use of force on June 27, 2019, Baez "has little to say" about Rodriguez and Parker (Mot. to Dismiss at 7).   Defendants reference Grievance Log No. 1907-119-134 and argue that Baez's only mention of Nurse Parker is to note that she was in the medical room at the beginning of the incident (*id.*).   Defendants argue that at no point did Baez allege that Parker was deliberately indifferent by not stopping FDOC staff from using force, which is the allegation Baez levies against Parker in the Second Amended Complaint (*id.*).

Defendants' exhaustion argument with respect to Nurse Parker fails to acknowledge Grievance Log No. 119-1906-1156, in which Baez complained that when the officers started beating him, Nurse Parker and a second nurse ran out of the room "leaving me for dead."   Baez was told by the responding official that no action would be taken on his grievance, because the incident was under review by the Inspector General's office.   Baez was given the same response when he subsequently filed Central Office appeal, Grievance Log No. 19-6-26357, wherein he complained that the nurses watched as the officers beat him.

It is evident that the FDOC's established administrative grievance process was not available to address Baez's failure to intervene claim against Nurse Parker, as evidenced by the grievance responders' telling him that their respective offices would not act on the subject of this grievance because the Inspector General's office was investigating.   Defendants have failed to carry their burden of proving that Baez failed to exhaust available remedies with respect to his failure to intervene claim.   Therefore, Defendants' motion to dismiss should be denied as to this ground.

Defendants' exhaustion argument fares no better with respect to Baez's claim against Dr. Rodriguez.   Defendants argue Baez never asserted that Rodriguez was deliberately indifferent by failing to transfer him for emergency medical treatment, which is the allegation Baez makes in the Second Amended Complaint (Mot. to Dismiss at 7–8).   Defendants argue that Baez even acknowledged, in Grievance Log No. 19-6-26357, that Dr. Rodriguez sent him to an eye specialist (*id.* at 8).

Defendants' exhaustion argument fails to acknowledge Baez's Grievance Log No. 1907-119-134, in which Baez expressly complained that the use of excessive force occurred on June 27, 2019, and as of July 7, 2019 (the date of the formal grievance) he had not received medical attention and had been experiencing blindness in one eye and blurred vision in the other for ten days.   In that formal

grievance, Baez also complained that he needed medical attention. The warden responded that the matter was under review by the Inspector General, and directed Baez to submit future inquiries to the institutional inspector by submitting a DC6-236 Inmate Request.

Baez appealed the warden's response to the Central Office, Grievance Log No. 19-6-26357. Although Defendants are correct that Baez acknowledged that Dr. Rodriguez eventually sent him to an eye specialist, Baez complained about "medical negligence" and referred to Grievance Log No. 119-1907-003, wherein he complained about Dr. Rodriguez's failure to send him to an outside hospital for emergency treatment. The Central Office denied Baez's request for action, on the ground that the Inspector General's office was reviewing the matter.

Thereafter, on July 17, 2019, Baez followed the warden's instruction to submit future inquiries to the institutional inspector by submitting a DC6-236 Inmate Request. Baez submitted Grievance Log No. 119-1907-0742 on the DC6-236 Inmate Request form to the Inspector's Office. The entirety of that grievance, with the exception of one sentence, concerned the lack of proper medical treatment for the injuries he suffered on June 27, 2019. The institutional inspector responded that Baez was seen by medical staff, at the direction of the Inspector General's office, during the week prior to July 22, 2019, the date of the inspector's response.

Applying the *Turner* analysis, the undersigned concludes that Defendants have failed to carry their burden of proving that Baez failed to exhaust available remedies with respect to his claim against Dr. Rodriguez.   Therefore, Defendants' motion to dismiss should be denied as to this ground.

## III.   FAILURE TO STATE A CLAIM

As a second ground for dismissal, Defendants Rodriguez and Parker contend Baez's allegations fail to state a plausible Eighth Amendment claim against either of them (Mot. to Dismiss at 8–11).   Baez contends his factual allegations state a plausible Eighth Amendment claim (Resp. to Mot. to Dismiss at 5–8).

### A.   Legal Framework

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal of the complaint for failure to state a claim on which relief can be granted.   While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do."   *Id.*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   "Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). This "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim. *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto" and incorporated into the complaint by reference. *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006) (internal quotation marks and citation omitted). The court also

accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### B.    Discussion

#### 1.    Failure to Intervene Claim Against Nurse Parker

A defendant who is present at the scene and fails to take reasonable steps to protect the victim of a use of excessive force may be held liable for the nonfeasance. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008); *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998); *see also Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985).   However, this liability arises only when the non-intervening defendant is in a position to intervene and fails to do so.   *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) (citing *Ensley*, 142 F.3d at 1407); *see also Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requir[es] the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct").   The duty to intervene has been found applicable to prison nurses.   *See Davis v. Rennie*, 264 F.3d 86. 114–15 (1st Cir. 2001) (personnel of state hospital had duty to intervene to

prevent excessive force against patient); *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th

Cir. 1996) (finding a duty and noting that the nurse could have directed the hospital

security officers to stop their attack or could have called for other security to arrive,

rather than idly watching the attack unfold).

Here, Baez alleges that Nurse Parker was in the medical room and saw

Defendant Walsingham punch him in the face and Defendants Simmons and

Allender slam him to the floor face first (Second Amended Complaint at 7).   Baez

alleges Nurse Parker ran out of the room instead of doing anything to stop the assault

(*id.*).   Construing Baez's allegations liberally and in the light most favorable to him,

Baez's allegations state a plausible failure to intervene claim against Nurse Parker.

*See, e.g., Slaughter v. Bryson*, No. 5:15-cv-90, 2018 WL 1400976, at *14 (S.D. Ga.

Mar. 20, 2018) (plaintiff's allegations stated a plausible failure to intervene claim

against nurse, where plaintiff alleged that nurse witnessed alleged use of excessive

force by officers, laughed and mocked plaintiff while he was being assaulted, and

allowed officers to remove plaintiff from medical department), *Report and*

*Recommendation Adopted by* 2018 WL 3536076 (S.D. Fla. July 23, 2018); *Neely v.*

*Parra*, No. 5:13cv316/RS/GRJ, 2015 WL 500794, at *3 (N.D. Fla. Feb. 5, 2015)

(plaintiff's allegations stated a plausible failure to intervene claim against nurse,

where plaintiff alleged that nurse "stood by and watched" him being beaten, but did not take any action to stop the beating or intervene in any way).

### 2.    Deliberate Indifference Claim Against Dr. Rodriguez

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three elements.  First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted).    To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state

law.  *Estelle*, 429 U.S. at 105–06.   Similarly, to show the required subjective intent

to punish, a plaintiff must demonstrate that the public official acted with an attitude

of "deliberate indifference," *id.* at 105, which is in turn defined as requiring two

separate things:   "aware[ness] of facts from which the inference could be drawn that

a substantial risk of serious harm exists and . . . draw[ing of] the inference," *Farmer*,

511 U.S. at 837.   Delay in providing "medical treatment known to be necessary"

may qualify as deliberate indifference.  *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d

1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d

700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for

non-medical reasons, a case of deliberate indifference has been made out.").

In order to satisfy the final element of an Eighth Amendment claim for

deprivation of medical care, a plaintiff must show that the defendant's deliberate

indifference caused his injury.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.

2000).

Taking the factual allegations of Baez's Second Amended Complaint as true,

Baez pleads a plausible Eighth Amendment violation against Dr. Rodriguez.   Baez

alleges on June 27, 2019, Dr. Rodriguez examined his injured eyes twice (Second

Amended Complaint at 7–8).   Baez alleges it was obvious that his injured eyes

required emergency medical treatment in a hospital, because Dr. Rodriguez could

not stop the bleeding from Baez's right eye socket (*id.* at 8).   Baez alleges Dr. Rodriguez "clinically determined" that his eyes required emergency medical treatment in a hospital (*id.*).   Baez alleges Dr. Rodriguez was aware that he faced a substantial risk of suffering loss of vision, or partial loss of vision, if he did not receive emergency medical treatment at a hospital (*id.*).   Baez alleges on June 27 and 28, Dr. Rodriguez deliberately refused to advise prison officials that Baez required emergency medical treatment in a hospital; Rodriguez refused to take any action to have Baez transported to a hospital; and Rodriguez refused to take any action to provide emergency medical treatment for his injured eyes (*id.*).   Baez alleges as a result of Dr. Rodriguez's conduct, he became completely blind in his right eye and partially blind in his left eye (*id.*).

Baez's factual allegations plausibly suggest that Dr. Rodriguez exhibited deliberate indifference to Baez's need for emergency medical treatment for his eyes. Further, Baez's allegations plausibly suggest a causal connection between Dr. Rodriguez's conduct and Baez's injury.   Baez's allegations state a plausible Eighth Amendment claim against Dr. Rodriguez.

## IV.   QUALIFIED IMMUNITY

As a final basis for dismissal, Dr. Rodriguez and Nurse Parker contend that to the extent Baez brings claims against them in their individual capacities, the claims

should be dismissed based on qualified immunity (Mot. to Dismiss at 11–12). Baez argues Defendants are not entitled to qualified immunity (Resp. to Mot. to Dismiss at 8–9).

It is undisputed that at the time of the events at issue, the medical Defendants, including Dr. Rodriguez and Nurse Parker (as well as Nurse Shirah), were employees of Centurion, a private entity which contracted with the State of Florida to provide medical services to FDOC inmates (*see, e.g.*, ECF Nos. 49–50, Centurion of Florida, LLC's Notice providing last known address for Defendant Nurse Shirah; ECF No. 39, Answer by Defendants Allender, Daniels, and Evans, at 2). In *Richardson v. McKnight*, 521 U.S. 399, 412–13 (1997), the Supreme Court held that prison guards who were employees of a private firm "systematically organized to assume a major lengthy administrative task . . . with limited direct supervision by the government," and which "undertakes that task for profit and potentially in competition with other firms," do not enjoy immunity from suit in a § 1983 case. Following *Richardson*, the Eleventh Circuit held that qualified immunity did not extend to a physician employed by a for-profit company with which the government contracted to provide medical services for inmates at a county jail. *See Hinson v. Edmond*, 192 F.3d 1342, 1347 (11th Cir. 1999), *opinion amended by* 205 F.3d 1264 (11th Cir. 2000) (citing *Richardson*).

Case No.:  3:20cv5591/MCR/EMT

Like the for-profit Defendants in *Hinson*, the medical Defendants in the present case are employees of a private firm that contracted to perform a state function of providing medical services at a government correctional facility. Based upon *Hinson*, the undersigned concludes that Dr. Rodriguez and Nurse Parker are not entitled to assert a qualified immunity defense. *See, e.g., Scott v. Campbell*, No. 4:08cv205/RH/WCS, 2009 WL 3028306, at *4 (N.D. Fla. Sept. 17, 2009) (employees of private contractor which provided medical care to inmates at county jail acted under color of law when they refused to treat detainee's chronic pain, but they were not eligible to assert qualified immunity against detainee's Eighth Amendment claims) (citing *Hinson* and *Richardson*).

V.    CONCLUSION

Defendants Rodriguez and Parker failed to carry their burden of proving that Baez failed to exhaust administrative remedies prior to filing this § 1983 action. Additionally, the factual allegations of Baez's Second Amended Complaint state a plausible Eighth Amendment claim against Dr. Rodriguez and Nurse Parker. Finally, Defendants Rodriguez and Parker are not entitled to qualified immunity. Therefore, Defendants' motion to dismiss should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

That the motion to dismiss filed by Defendants Dr. Rodriguez and Nurse Parker (ECF No. 41) be **DENIED.**

At Pensacola, Florida this 25th day of November 2020.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**